

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00499-CV

In the Interest of **A.N.A.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-01683
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  December 4, 2013

AFFIRMED; MOTION TO WITHDRAW GRANTED

The trial court terminated A.S.'s and N.A.A.'s parental rights to their child, A.N.A. Both

A.S. and N.A.A. appeal the termination order. We affirm.

### BACKGROUND

On July 17, 2012, the Texas Department of Family and Protective Services filed an original

petition for protection of a child. The petition named A.N.A. as the child the subject of the suit,

A.S. as the child's mother, and N.A.A. as the child's father.[1] Almost a year later, on June 21, 2013,

the case went to trial. At the time of trial, A.N.A. was four years old and living with her paternal

grandparents.

---

[1]To protect the privacy of the parties in this case, we identify the child and her parents by their initials. *See* TEX. FAM.
CODE ANN. § 109.002(d) (West Supp. 2013).

At trial, a Department case worker, Kimberly Barnhill, testified that A.N.A. came into the Department's care because of drug use and alleged criminal activity involving both parents. Service plans were created for both parents. The parents were informed of the service plans and appeared to understand what was required of them to reunify their family. A.S. was required to complete empowerment and parenting classes, counseling, and drug treatment. She was also required to provide proof of stable housing and employment and to participate in drug testing. In addition, A.S. was afforded two supervised visits with A.N.A. per month. Although A.S. had completed an empowerment class and appeared for a psychosocial evaluation, she had failed to complete a parenting class, attend counseling, participate in drug treatment, and show proof of stable housing and employment. A.S. also tested positive for cocaine on two occasions. In addition, a new criminal charge—a theft charge—had been filed against A.S. A.S. failed to regularly attend her visits with the child. In fact, Barnhill scheduled a visit with A.N.A. the week before trial. A.S. failed to attend this visit. According to Barnhill, A.S. had not completed her service plan, had not demonstrated any type of lifestyle change, and had not demonstrated that she could provide any kind of stability for A.N.A.

Barnhill further testified that N.A.A.'s service plan included the completion of parenting and empowerment classes, counseling, and drug treatment as well as proof of stable housing and employment. N.A.A. did not complete any part of his service plan. In December 2012, N.A.A. was convicted of aggravated robbery and was sentenced to twelve years in prison. Because N.A.A. was in prison, he did not have stable housing or employment. Barnhill stated that N.A.A. had done nothing to eliminate concerns that brought A.N.A. into the Department's care at the beginning of the case. Barnhill believed it was in A.N.A.'s best interest that A.S's and N.A.A.'s parental rights be terminated. A.N.A. was doing well in her current placement with her paternal grandparents, which was a long-term placement.

A.S. also testified at trial. According to A.S., she was currently on probation for aggravated robbery. Her term of probation was ten years. A.S. admitted she was living on the streets in January 2013, and was in jail from January 6, 2013, to March 13, 2013, on a theft charge. At the time of trial, A.S. was living with her grandmother and helping to take care of her. A.S. stated she was presently employed cleaning houses, and had just started counseling, and was scheduled to begin outpatient drug treatment. A.S. denied ever receiving a message from Barnhill regarding a visit with A.N.A., stating that the answering machine at her grandmother's house did not work.

N.A.A., who was incarcerated at the time of trial, testified by telephone. He stated he had received several copies of a service plan from the Department, but he did not "understand it too well." He admitted he had been in jail since August 3, 2012. He further admitted he was sentenced to twelve years in prison for aggravated robbery on December 3, 2012.

At the conclusion of the hearing, the trial court found by clear and convincing evidence that A.S. (1) had constructively abandoned the child; (2) had failed to comply with provisions of a court order that established the actions necessary for the parent to obtain the return of the child; and (3) had used a controlled substance in a manner that endangered the health and safety of the child, and had failed to complete a court ordered substance abuse treatment program or after completion of a court ordered substance abuse treatment program continued to abuse a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(1)(N), (O), (P) (West Supp. 2013). The trial court also found by clear and convincing evidence that N.A.A. (1) had constructively abandoned the child; (2) had failed to comply with the provisions of a court order that established the actions necessary for the parent to obtain the return of the child; and (3) had knowingly engaged in criminal conduct that had resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing of the petition. *See id.* § 161.001(1)(N), (O), (Q). The court also found by clear and convincing evidence that the

termination of the parent-child relationship as to both A.S. and N.A.A. was in the child's best interest. *See id*. § 161.001(2).

### A.S.'S APPEAL

A.S.'s court-appointed appellate counsel filed a brief containing a professional evaluation of the record and demonstrating that there are no arguable grounds to be advanced. Counsel concludes that A.S.'s appeal is frivolous and without merit. The brief meets the requirements of *Anders v. California*, 386 U.S. 738 (1967). *See In re R.R.*, No. 04-03-00096-CV, 2003 WL 21157944, at *4 (Tex. App.—San Antonio 2003, order) (applying *Anders* procedure in appeal from order terminating parental rights), *disp. on merits*, 2003 WL 22080522 (Tex. App.—San Antonio 2003, no pet.). In the brief, counsel advises A.S. of her right to examine the record and to file a pro se brief, and represents that he served a copy of the brief on A.S. by mail. Counsel subsequently notified us in writing that he mailed a copy of the brief and the motion to A.S., but they were returned in the original envelope bearing the notation, "Undeliverable As Addressed. No Forwarding Order on File."[2] No pro se brief was filed.

A.S. had a duty to keep counsel apprised of her current address. Her failure to do so means she has forfeited her right to receive a copy of the *Anders* brief and the right to file a pro se brief. *See In the Interest of E.M.M.M.*, No. 04-10-00771-CV, 2011 WL 1600981, at *1 (Tex. App.—San Antonio 2011, no pet.); *see also In re Schulman*, 252 S.W.3d 403, 408 n. 21 (Tex. Crim. App. 2008); *Gonzales v. State*, 903 S.W.2d 404, 405 (Tex. App.—Texarkana 1995, no pet.).

After reviewing the record, we conclude A.S.'s appeal is frivolous and without merit.

---

[2]We issued an order informing A.S. of her right to file a pro se brief. Our order was also returned as undeliverable.

**N.A.A.'S APPEAL**

Before a trial court may terminate the parent-child relationship, it must find by clear and convincing evidence (1) one of the statutory grounds for termination and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In the Interest of R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, the prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008).

The Texas Supreme Court has identified some factors that may be relevant in determining the best interest of the child: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual; (6) the plans for the child by the parent and the individual seeking custody; (7) the stability of the home; (8) the parent's acts or omissions that indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). But the Supreme Court has stated: "[W]e have never held that these considerations are exhaustive, or that *all* such considerations must be proved as a condition precedent to parental termination." *In the Interest of C.H.*, 89 S.W.3d 17, 27 (Tex. 2002) (emphasis in original); *see also* TEX. FAM. CODE ANN. § 263.307(b) (listing additional factors that should be considered by the court in determining whether the child's parents are willing and able to provide the child with a safe environment).

N.A.A. argues the evidence was legally and factually insufficient to support a finding that termination was in A.N.A.'s best interest. Specifically, N.A.A. faults the trial court for "ignoring" many of the *Holley* factors. However, it is well-established that the trial court was not required to consider all of the *Holley* factors in making its determination. *See C.H.*, 89 S.W.3d at 27. "The

absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *See id.*

Here, the evidence showed A.N.A. was four years old at the time of trial and, therefore, too young to testify about her desires. A.N.A. was initially removed from the home because of drug use and criminal activity involving both parents. After A.N.A. was removed from the home, N.A.A. was convicted of a violent crime, aggravated robbery, and was sentenced to twelve years in prison. N.A.A.'s long-term incarceration means he will not be able to provide A.N.A. with a stable environment or provide her food, clothing, shelter, and emotional support for many years to come. Moreover, N.A.A. did not attempt to accomplish any part of his service plan during the pendency of the underlying case. Finally, the evidence showed A.N.A. was doing well in her current environment, which was a permanent placement. In light of this evidence, a reasonable trier of fact could form a firm belief or conviction that termination of N.A.A.'s parental rights was in A.N.A.'s best interest. We conclude the evidence was legally and factually sufficient to support the trial court's finding.

### CONCLUSION

The trial court's termination order is affirmed. Counsel's motion to withdraw is granted.

Karen Angelini, Justice